**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CORY PAIGE, #M02717,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-00858-SMY** |
| | ) | |
| **JOHN DOE 1,** | ) | |
| **KIMBERLEY BUTLER,** | ) | |
| **STEPHANIE,** | ) | |
| **JOHN DOES 3-4,** | ) | |
| **CHRISTOPHER MATHIS,** | ) | |
| **KELLY PIERCE,** | ) | |
| **LT. SMOLAK,** | ) | |
| **ILL. DEPT. OF CORR.,** | ) | |
| **OFFICER KAREN, and** | ) | |
| **HOWELL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Cory Paige, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 1). In an initial threshold screening order, this Court severed a number of Paige's claims into a separate Complaint. The claims now before the Court for screening are Counts 1 through 8 of that initial Order.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim

upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

**The Complaint**

Plaintiff Paige alleges that from August 14, 2015 through September 5, 2015, he was housed in a cell at Menard that lacked hot or cold running water (Doc. 1 at 8-9). He notified Defendants Karen and Howell of the issue, but was not relocated to a functional cell (*Id.* at 9). Instead, they told him he would have to await maintenance (*Id.*). Paige alleges that he was housed in the cell during very hot weather and had no ability to wash himself or to use water to regulate his body temperature (*Id.*). Paige also lodged at least 3 written grievances with John Doe 3 (lieutenant) about the conditions of the cell, to which he received no response (*Id.* at 9-10; Doc. 1-1, 2-4).

In addition to the written grievances to John Doe 3 (lieutenant), Paige personally spoke to John Doe 3 on multiple occasions while en route to chow (Doc. 1 at 10). John Doe 3 reiterated that plumbing issues were within the purview of maintenance (*Id.*). John Doe 3 denied requests for bottled water or daily showers—solutions Paige proposed while awaiting maintenance (*Id.*). Paige also attempted written and verbal correspondence with John Doe 4 (major) in an effort to address the water issue (*Id.* at 10-11; Doc 1-1 at 5-8). John Doe 4 also responded that water issues were a problem reserved for maintenance (Doc. 1 at 11).

Paige decided to take his issue to Warden Butler via written grievances (*Id.*; Doc. 1-1 at 9-11). Butler never responded (*Id.*). Paige then lodged written grievances with John Doe 1 (medical director), Dr. Trost and health care administrator Gail Walls (Doc. 1 at 12; Doc. 1-1 at 12-17). In the letters, Paige stated his belief that IDOC and Wexford were responsible for

providing him with sanitary living conditions, something that was not being done in his condemned cell (Doc. 1 at 12; Doc. 1-1 at 12-19).

Paige generally alleges that the Defendants' failure to respond to his grievances constituted deliberate indifference because, as a result of the non-response, he was continually subject to inhumane living conditions (Doc. 1 at 13).

On August 31, 2015, Paige resorted to submitting a grievance to his counselor (Mathis) via the traditional institutional grievance form (*Id.* at 13-15; Doc. 1-1 at 21-22). Responses to the grievance suggest that he was relocated by September 15, 2015 and that the institution concluded that a faster response by maintenance either was not required or was infeasible (Doc. 1 at 13-15; Doc. 1-1 at 20-22). Paige alleges that counselor Mathis's negative attitude tainted Defendant Pierce's response and lead her to pass over his grievances without taking action (*Id.* at 15).

Paige claims that once he was finally moved out of his condemned cell (West cell house 1005), he found himself in another cell with no water or cable plug (East cell house 823) (Doc. 15). He believes the move was retaliatory (*Id.*). He aired the issues about the cell to the gallery officer, a sergeant and others, but was again told he would have to await maintenance (*Id.*). The condemned cell prolonged Paige's inability to maintain appropriate personal hygiene (*Id.* at 16). Paige raised his issues with cell 823 to Defendant Smolak via written grievance (*Id.* at 17; Doc. 1-1 at 23-24).

Paige's hygiene issues also interfered with his ability to practice his religion because he was unable to wash himself daily before saying his call to prayer—as is typically required by the Muslim faith (Doc. 1 at 17). Paige alerted Defendants Karen, Howell, Mathis and Lt. Smolak to this problem and was told he should change his religion (*Id.* at 17-18).

Paige also requested and was denied cleaning supplies he felt he needed to keep his cell sanitary (*Id.* at 18-19). Consequently, he was forced to utilize soap he bought at commissary and water from the toilet to wash himself or his cell (*Id.* at 19). Paige alleges that during this timeframe, several inmates and staff contracted MRSA—giving rise to the risk of contagion (*Id.* at 19-20). Paige himself contracted a rash and was called out for sick call (*Id.* at 20).

While he was in the waiting area, Defendant Stephanie approached him and publicly stated "are you the one with the rash" in violation of inmate privacy (*Id.*). Paige protested such treatment which annoyed Stephanie and led to poor medical care (*Id.* at 20-21). Stephanie allegedly told Paige he had a skin irritation without examining him (*Id.* at 20-22). Paige alleges this was due in part to her attitude and in part due to her lack of adequate training or expertise (*Id.*). Records Paige appended to his Complaint suggest that he was prescribed antibiotics (Doc. 1-1 at 25-28).

Paige generally alleges that the IDOC has a burden to provide inmates with the basic necessities of life (*Id.* at 23). He claims that IDOC and John Doe 1 (director) have known for some time that Menard is an insufficient facility, and yet they continually have failed take action (*Id.* at 24). Previous lawsuits as well as reports by organizations like the John Howard Association serve as evidence of the inadequacy of Menard (*Id.* at 24; Doc. 1-1 at 31-58).

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:** Eighth Amendment conditions of confinement claim against Defendants Karen and Howell for keeping Paige in a cell without running water from August 14, 2015, through September 5, 2015;

**Count 2:** Eighth Amendment conditions of confinement claim against John Does 3 and 4 for ignoring Paige's grievances about his lack of water;

**Count 3:** Eighth Amendment conditions of confinement claim against Warden Butler for failing to address his grievances regarding the lack of running water;

**Count 4:** Eighth Amendment conditions of confinement claim against Defendants Mathis and Pierce for their responses to Paige's grievances about his lack of running water;

**Count 5:** Eighth Amendment conditions of confinement claim against Defendant Smolak for his failure to address Paige's lack of running water in his second cell placement;

**Count 6:** First Amendment restriction of religious freedom claim against Defendants Karen, Howell, Mathis, and Smolak for interfering in his ability to practice his religion by depriving him of daily access to running water,

**Count 7:** Eighth Amendment deliberate indifference claim against Defendant Stephanie for improperly treating a rash he contracted as a result of the conditions in his cell;

**Count 8**: Eighth Amendment conditions of confinement claim against Defendants IDOC and John Doe 1 (director) for knowingly maintaining a substandard facility;

All of the claims remaining in this case are related to Paige's conditions of confinement. Under the Eighth Amendment, life's necessities include shelter and heat, as well as hygiene items. *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (citations omitted). Determining what conditions might constitute a violation of the Eighth Amendment is a very factually nuanced inquiry. *See id.* at 492-495 (collecting cases). While certain

conditions in isolation may not constitute an Eighth Amendment violation, those same conditions taken together may state a claim. *Id.* at 493.

The Seventh Circuit has found that conditions such as confinement in a cold cell without bedding or clothing, confinement without a bed for two days, denial of clothing for three days and denial of any human interaction or personal property for three days or more could be conditions that contribute to the existence of an Eighth Amendment violation. *See id.* at 492-95. For example, in *Vinning-El v. Long,* 482 F.3d 923, 924 (7th Cir. 2007), the Seventh Circuit found that the plaintiff identified conditions sufficient to proceed beyond summary judgment where he alleged that he was stripped of his clothing, was separated from his personal property and was placed in a filthy disciplinary cell for three days.

Very recently, the Seventh Circuit found that being held in a cell with a leaky window and no heat for 3 to 4 days in the dead of winter could amount to unconstitutional conditions of confinement. *See Haywood v. Hathaway*, No. 12-1678 (7th Cir. Nov. 29, 2016). By contrast, the Seventh Circuit has found that temporary discomforts or inconveniences are not sufficient to rise to the level of a Constitutional violation. *See e.g. Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (holding that being detained for five days in a roach infested cell without hygiene items was not an Eighth Amendment violation where the incident was isolated to just one inmate); *Stewart v. Wright*, 101 F.3d 704 (Table), *1, *1-2 (7th Cir. 1996) (finding that three days in

a 'dry cell' without running water or amenities did not constitute an Eighth Amendment violation).

**Count 1**

Count 1 shall be allowed to proceed against Defendants Karen and Howell because Paige alleges that these Defendants were on duty in his cell house during the time that he lacked water and that they ignored his requests for assistance or relocation. Twenty or more days in a cell without running water far exceeds the conditions contemplated by *Stewart*. 101 F.3d 704 (Table), at *1-2. Paige also alleges that he suffered harm in the form of a skin rash or irritation. Such a potential deprivation is sufficient to proceed beyond threshold screening.

**Count 2**

Count 2 shall be allowed to proceed against John Does 3 and 4, the alleged lieutenant and major of the West cell house. Given the allegations, it is plausible that further development of the factual record could demonstrate that these defendants played a role in Paige's conditions of confinement.

**Count 3**

As to Count 3, the Complaint alleges that Defendant Butler failed to adequately respond to Paige's grievances about the conditions of his cell. If Warden Butler affirmatively knew of the conditions in Paige's cell and failed to take any remedial

action, there may be a plausible conditions of confinement claim. Accordingly, Count 3 will also be allowed to proceed for further development of the factual record.

**Count 4**

Supervisory prison officials and grievance officers are not subject to the same degree of liability as officers interacting with inmates on a daily basis. For example, a grievance officer reviewing a complaint about medical care or the lack thereof, may appropriately discharge his or her duty by reviewing the grievance and following up with medical staff to verify that an inmate is receiving care. *See e.g. Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005). A grievance official may typically assume that if an inmate is under the care of trained medical staff, medical needs are being properly addressed. *Id.*

In the context of generic deliberate indifference, a plaintiff may establish liability by showing that a grievance officer knew of a violative condition, and deliberately and intentionally failed to act to remedy the situation. *See Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). "The minimum intent required is '*actual*' knowledge of *impending* harm *easily* preventable. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm." *Id.*.

Here, Paige has alleged sufficient facts for his claim against grievance officials Mathis and Pierce to proceed beyond threshold screening. Specifically, he explicitly, alleges that these officials were aware of his confinement in a non-functional cell and

that they failed to address the issue. A grievance he appended to his Complaint suggests that they did not pass judgment on his grievance until after he had already been moved to a functional cell. If the Defendants did not learn of the conditions of his cell until after he was relocated, that could jeopardize the viability of a conditions of confinement claim against them. However, at this juncture, the Court will not dismiss the claim outright.

**Count 5**

Paige alleges that once he was moved to a different cell in early September 2015, the new cell still lacked running water. He reported the issue to Defendant Smolak, who insisted that he would have to wait for help from the maintenance department. It is unclear how long Paige was forced to stay in the second cell without running water or if he suffered specific harm as a result of his confinement in that cell. However, the Court cannot say at this juncture that there are no facts to support a viable claim. Accordingly, Count 5 will be allowed to proceed against Defendant Smolak.

**Count 6**

A prisoner's right to freely exercise his religious beliefs does not depend upon his ability to pursue each and every aspect of the practice of his religion. *See O'Lone v. Estate of Shabazz,* 482 U.S. 342, 352 (1987); *Hunafa v. Murphy,* 907 F.2d 46, 48 (7th Cir. 1990). A prison may restrict a prisoner's ability to adhere absolutely to a particular tenet of his religion and if the prison has sound penological interests supporting the

restriction, and if those interests outweigh the prisoner's religious interests, the restriction does not violate the First Amendment. *O'Lone*, 482 U.S. at 352; *Hunafa*, 907 F.2d at 48. Paige's claim for restriction of his religious freedom will be allowed to proceed beyond screening for development of a more comprehensive factual record regarding the alleged deprivation, the prison's justifications (if any) for the deprivation and the impact of the deprivation on his religious freedom. Thus, Count 6 shall proceed against all Defendants named in connection with the deprivation—Karen, Howell, Mathis and Smolak.

**Count 7**

Paige alleges that Defendant Stephanie exhibited deliberate indifference to his serious medical condition—a skin rash—that he contracted as a result of his cell conditions. Specifically, he alleges that Stephanie exhibited deliberate indifference by failing to examine his skin condition. A rash may or may not be a sufficiently serious medical condition to state a claim for deliberate indifference, but at this stage of the litigation, the Court will assume, without deciding, that a rash is sufficient.

In the context of a deliberate indifference claim, "knowledge and intent may be pleaded generally (which is to say, in a conclusory fashion), [and] the lack of detail does not permit dismissal." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "It is enough to lay out a plausible grievance. A prisoner's statement that he repeatedly alerted medical personnel to a serious medical condition, that they did nothing in response and that permanent injury ensued, is

enough to state a claim on which relief may be granted—if it names the persons responsible for the problem." *Id.*

However, a claim for medical negligence does not amount to deliberate indifference. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). Medical malpractice, negligence and even gross negligence does not equate to deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). "It is not enough to show, for instance, that a doctor should have known that surgery was necessary; rather, the doctor must know that surgery was necessary and then consciously disregard that need in order to be held deliberately indifferent." *Id.*

Based on the facts set forth in the Complaint, the Court will not allow Paige's deliberate indifference claim to proceed against Defendant Stephanie. Paige alleges that she was deliberately indifferent to his need because she provided an ineffective cream for his rash. However, the records he appended to his Complaint show that approximately two weeks later, he received antibiotics for the rash. To the extent Stephanie erred by prescribing a cream, the error appears to constitute negligence at best and is thus insufficient to state a claim for deliberate indifference. Additionally, Paige does not allege that he suffered any lasting harm as a result of the rash incident. Accordingly, Count 7 will be dismissed without prejudice for failure to state a claim.

**Count 8**

Finally, turning to the conditions of confinement claim against IDOC and John Doe 1 (director), Paige alleges that these defendants were aware of the infirmities of the Menard facility based on external reports on prison conditions and prior lawsuits. In support of this claim, Paige attached to his Complaint two recent monitoring reports by third-parties regarding the conditions of Menard facilities (Doc. 1-1 at 31-58). Paige also

claims that since at least 2010, these defendants were on notice of the problems in Menard from a lawsuit he refers to as *Lippert v. Wexford* (Doc. 1 at 24), wherein a court allegedly found that Wexford was inadequately staffed to attend to the medical needs of inmates.

First, as to Defendant IDOC, a claim may only proceed against IDOC to the extent it seeks injunctive relief. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *see also Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages). Here, Paige does seek injunctive relief in the form of an institutional transfer, but it does not appear that he is seeking this relief specifically in relation to his conditions of confinement claim. Rather, it appears that he is seeking injunctive relief due to his ongoing medical issue (chronic head pain and a brain tumor—claims severed into a separate case). Paige does not claim that he is still being housed in a cell without running water or that he specifically fears this harm in the foreseeable future. Accordingly, his conditions of confinement claim against IDOC shall be dismissed without prejudice because Paige does not seek the type of relief the Court can grant for this claim.

Second, as to Defendant John Doe 1 (director), the claim for conditions of confinement will also be dismissed without prejudice. Section 1983 liability is premised in large part upon personal liability for harm that befalls prisoners. Though, in some circumstances, a § 1983 claim can be made against a supervisory official, an inmate

must demonstrate that the official was alerted to the issue and refused or declined to exercise his or her authority to address the issue. *Vance v. Peters*, 97 F.3d 987, 993-94 (7th Cir. 1996). The strongest assertion Paige has made in this regard is that there were reports about the status of Menard and that there were other lawsuits that should have put John Doe 1 (director) on notice of the problems. However, this allegation is too conclusory to state a claim.

The reports that Paige appended to his Complaint are from 2011 and 2013 (Doc. 1-1 at 31-58). The date does not invalidate the contents of the reports, but it does leave open the possibility that in the intervening years from 2013 to 2016, the "director" could have taken steps to remedy the conditions. Paige does not explain how the director was personally aware of his conditions of confinement issue. Nor does Paige allege that he sent correspondence to the director on a specific date or during a specific time frame and received no response. Taken together, these deficiencies make Paige's claim implausible at this juncture. Accordingly, Count 8 as to John Doe 1 (director) shall be dismissed without prejudice for failure to allege any causal link between this defendant and the harm Paige alleges as a result of poor conditions of confinement.

## Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Count 2 against John Does 3 and 4 whose names are currently unknown. However, these parties must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's

complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 832 (7th Cir. 2009).

In this case, Paige has attempted to provide identifying information in the form of the position of these individuals in his housing unit—John Doe 3 ("lieutenant"), and John Doe 4 ("major"). To the extent that this information helps to identify the defendants, officials are urged to cooperate with formal or informal discovery to assist the Plaintiff in ascertaining the identity of these individuals. Additional guidelines for discovery will be set by the United States Magistrate Judge.

"Depending on the particular circumstances of the case, the court may assist the plaintiff by providing counsel for the limited purpose of amending the complaint; by ordering the named defendants to disclose the identities of unnamed officials involved; by allowing the case to proceed to discovery against high-level administrators with the expectation that they will identify the officials personally responsible; by dismissing the complaint without prejudice and providing a list of defects in the complaint; by ordering service on all officers who were on duty during the incident in question; or by some other means." *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996).

Under the circumstances presented, the Court finds that the Warden at Menard is best suited to respond to discovery aimed at identifying the unknown personnel at the facility. Accordingly, Warden Jeff Hutchinson will be formally added as a defendant, in his official capacity only, for the sole purpose of assisting in identifying the unnamed parties. *See* FED. R. CIV. P. 21; FED. R. CIV. P. 17(d). Once the names of John Does 3-4 are discovered, Plaintiff shall file a motion to substitute the newly identified Defendants in place of the generic designation in the case caption and throughout the Complaint. Upon receipt of said motion, this Court will substitute the names of the parties for John Does 3 and 4 and service will proceed against those parties. At that time, the Court will also dismiss the Warden of Menard.

## Disposition

**IT IS ORDERED** that **COUNTS 7 AND 8** are **DISMISSED** without prejudice against Defendants **STEPHANIE, IDOC and JOHN DOE 1 (director)** for failure to state a claim upon which relief may be granted.

The **CLERK** is **DIRECTED** to **ADD** Defendant **JEFF HUTCHISON**, Warden of Menard, for the sole purpose of assisting in identifying **JOHN DOES 3 and 4**.

**IT IS ORDERED** that **COUNTS 1-6** shall receive further review against Defendants **KAREN, HOWELL, JOHN DOES 3 AND 4, BUTLER, MATHIS, PIERCE, and SMOLAK.** With respect to **COUNTS 1-6** the Clerk of Court shall prepare for **DEFENDANTS KAREN, HOWELL, BUTLER, MATHIS, PIERCE, SMOLAK, and**

**JEFF HUTCHISON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown "John Doe" Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for

consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 4). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be

paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 5, 2016**

**s/ STACI M. YANDLE**
**U.S. District Judge**